```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
_____
                                    :
TIMOTHY R. DEFOGGI,                 :
                                    :
          Petitioner,               :  Civ. No. 20-3889 (NLH)
                                    :
     v.                             :  OPINION
                                    :
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Respondent.               :
_____:
```

APPEARANCES:

Timothy R. Defoggi, 56316-037
Fort Dix
Federal Correctional Institution
Inmate Mail/Parcels
East: P.O. Box 2000
Fort Dix, NJ 08640

    Petitioner Pro se

Craig Carpenito, United States Attorney
Elizabeth Ann Pascal, Assistant United States Attorney
Office of the U.S. Attorney
401 Market Street
P.O. Box 2098
Camden, NJ 08101

    Counsel for Respondent

HILLMAN, District Judge

    Petitioner Timothy R. Defoggi brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asking to be released to home confinement due to the coronavirus COVID-19 pandemic. See ECF Nos. 1 & 7. He also moves for an emergency

hearing and reconsideration of this Court's order construing Docket Entry 7 as an amended petition.  ECF Nos. 6 & 13.  Respondent United States opposes the § 2241 petition, arguing that Petitioner failed to exhaust his administrative remedies and is otherwise ineligible for home confinement.  ECF No. 12.

For the reasons that follow, the Court will deny the motion for a hearing and dismiss the § 2241 petition.  Petitioner's motion for reconsideration is dismissed as moot.

I.  BACKGROUND

A jury in the United States District Court for the District of Nebraska convicted Petitioner of knowingly engaging in a child exploitation enterprise, 18 U.S.C. § 2252A(g); conspiracy to advertise child pornography,18 U.S.C. §§ 2251(d)(1),(e); conspiracy to distribute child pornography, 18 U.S.C. §§ 2252A(a)(2),(b)(1); and knowingly accessing a means or facility of interstate commerce to view child pornography, 18 U.S.C. § 2252A(a)(5)(B).  United States v. Defoggi, No. 8:13CR105 (D. Neb. Jan. 6, 2015) (ECF No. 290).  The district court vacated the convictions on Counts 2 and 3 as lesser included offenses of Count 1 and sentenced Petitioner to 300 months.  Id.

The Eighth Circuit reversed the exploitation enterprise conviction on appeal and remanded for resentencing.  United States v. Defoggi, 839 F.3d 701, 709-11, 713 (8th Cir. 2016).  On resentencing, the trial court reimposed its original sentence

of 300 months, consisting of four consecutive 75-month sentences.  United States v. Defoggi, 878 F.3d 1102, 1104 (8th Cir. 2018).  The Eighth Circuit affirmed.  Id.  According to the BOP's website, Petitioner's projected release date is July 28, 2034.  Inmate Locator, available at https://www.bop.gov/inmateloc/# (last visited June 1, 2020).

On January 30, 2020, the World Health Organization declared a Public Health Emergency of International Concern for the novel coronavirus rapidly spreading around the world.  See WHO Director-General's statement on IHR Emergency Committee on Novel Coronavirus (2019-nCoV), available at https://www.who.int/dg/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov) (last visited June 2, 2020).

> In January 2020, the Centers for Disease Control and Prevention began issuing Guidelines to the American public to protect against the coronavirus disease 2019 (COVID-19), a vicious and insidious disease that had suddenly attacked the country. One of the later Guidelines recommended that people stay at least six feet apart (about two arms' length) from other people and stay out of crowded places and avoid mass gatherings. Ubiquitous reminders to "social distance" or "physical distance" are now part of everyday life.

Wragg v. Ortiz, No. 20-5496, ___ F. Supp. 3d ___, 2020 WL 2745247, at *1 (D.N.J. May 27, 2020).  On March 26, 2020, the Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are non-violent and pose

3

minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." Memorandum for Director of Bureau Prisons, Mar. 26, 2020, available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited June 1, 2020) ("March 26 Memorandum").

The memorandum directed the BOP to "consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and" a "non-exhaustive list of discretionary factors:"

- The age and vulnerability of the inmate of COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related actively in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN,[1] with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

---

[1] Prisoner Assessment Tool Targeting Estimated Risk and Needs. According to the BOP's website, "[t]he risk and needs assessment system is used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." First Step Act - Frequently Asked Questions, available at

4

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximum public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

Id. at 1-2. Before the BOP may release any inmate, "the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement." Id. at 2. "[W]e cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways." Id.

President Trump signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020) into law on March 27, 2020. The CARES Act states in relevant part:

---

https://www.bop.gov/inmates/fsa/faq.jsp#fsa_system (last visited June 1, 2020).

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. No. 116-136, § 12003(b)(2) (2020). In a memorandum dated April 3, 2020, Attorney General Barr directed the BOP to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities . . . ." Memorandum for Director of Bureau of Prisons, Apr. 3, 2020, available at https://www.justice.gov/file/1266661/download (last visited June 1, 2020) ("April 3 Memorandum").

The April 3 Memorandum directed officials to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC," beginning at three particularly hard-hit BOP facilities, FCI Oakdale, FCI Danbury, and FCI Elkton, as well as "similarly situated facilities where you determine that COVID-19 is materially affecting operations." Id. at 2. Attorney General Barr stated that "now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates-not only those who were previously eligible for transfer." Id.

"Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though,

6

that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." Id.  The April 3 Memorandum concluded by noting that "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case.  Each inmate is unique and each requires the same individualized determinations we have always made in this context." Id. at 3.

Petitioner applied to the BOP for release on April 5, 2020.  ECF No. 1-1 at 1.  His request was denied on April 6, 2020, as he did "not meet the criteria per policy." Id.  Two days, later, Petitioner mailed his § 2241 petition seeking to be released on home confinement pursuant to the CARES Act.  ECF No. 1-2 at 1.  Petitioner argues he "is a prime candidate for immediate release to home confinement . . . as he meets a multitude of high risk health care factors related to the COVID-19 pandemic outlined by the Centers for Disease Control. Additionally, Plaintiff poses no risk of recidivism once released as is established through a BOP PATTERN score of -19 along with other low risk factors . . . ." ECF No. 1 at 2.

The Court administratively terminated the petition as Petitioner had not paid the filing fee or submitted an in forma

pauperis application.  ECF No. 3.  On April 28, 2020, Petitioner filed a motion for an emergency hearing.  ECF No. 6.  The Court reopened the matter once Petitioner paid the filing fee.  Petitioner also submitted an amended petition on the Clerk's form as requested by the Court in its order.  ECF No. 7.  The Court ordered the United States to respond on May 6, 2020.  ECF No. 10.  The United States filed its answer on May 15, 2020.[2]  ECF No. 12.

Petitioner filed a motion for reconsideration of the Court's order to answer, stating that he "believed that he was 'supplementing' his original filing and had no intention of 'amending' his original Petition or Motion."  ECF No. 13.  He did not file a response to the United States' answer but did supplement his filing with his medical history.  ECF No. 15.

II. DISCUSSION

　　A.　<u>Legal Standard</u>

Title 28, Section 2243 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

---

[2] The United States' request for the Court to accept its answer as timely filed <u>nunc pro tunc</u> is granted.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition must be construed liberally. See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

B.  Analysis

Petitioner asks this Court to conduct a hearing and, ultimately, release him from Fort Dix to serve out the remainder of his sentence on home confinement under the CARES Act. The United States argues the petition should be dismissed because Petitioner failed to exhaust his administrative remedies and is otherwise not entitled to release on home confinement.

"There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. § 2241. Because the exhaustion requirement is not jurisdictional, in exceptional cases a petitioner may be excused from exhaustion." Furando v. Ortiz, No. 20-3739, 2020 WL 1922357, at *3 (D.N.J. Apr. 21, 2020) (internal citations omitted). Failure to exhaust these remedies "generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice . . ." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). "We require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies

to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Id. at 761–62.

> BOP's administrative remedies have several tiers allowing "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." An inmate must first "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." Second, if the inmate is not satisfied, he may file a "formal written administrative Remedy Request, on the appropriate form (BP-9)," within "20 calendar days following the date on which the basis for the Request occurred.". Third, if the inmate "is not satisfied with the Warden's response," which must issue within 20 days, the inmate may "submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." The General Counsel has 40 days to respond. If an issue raised by the inmate concerns "an emergency" that "threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing."

Wragg v. Ortiz, No. 20-5496, ____ F. Supp. 3d ____, 2020 WL 2745247, at *11 (D.N.J. May 27, 2020) (quoting 28 C.F.R. §§ 542.10, 542.13(a), 542.14(a), 542.15(a), 542.18); see also Declaration of Senior Attorney Christina Clark ("Clark Dec.") ECF No. 12-1.

Petitioner filed a request on April 5, 2020 asking for release under the CARES Act. ECF No. 1-2. The request was denied on April 6, 2020. Petitioner did not file an appeal.

10

Clark Dec. ¶ 4. In his supplemental filing, Petitioner responded that he did not appeal "[d]ues to CARES Act and Memo from US Attorney General directing BOP to take 'IMMEDIATE' action to release qualified, low threat inmates to home confinement" in response to the prompt asking petitioners to "explain why you did not appeal." ECF No. 7 at 3.

There is no dispute that Petitioner failed to exhaust his administrative remedies. The reason put forth by Petitioner for not filing an appeal, his belief that the CARES Act mandates release of all low threat inmates, is not "cause" to excuse his failure to appeal. There also is no prejudice to Petitioner because the BOP appropriately exercised its authority in this situation.

Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion. 18 U.S.C. § 3624(c)(2); see also Prows v. Fed. Bureau of Prisons, 981 F.2d 466 (10th Cir. 1992) (holding prerelease custody statute does not bestow upon federal inmates an enforceable entitlement to any particular form of prerelease custody and provides merely an authorization, rather than a mandate, for nonprison confinement."). The CARES Act did not remove that discretion, it only gave the Attorney General the authority to expand the class of inmates that can be released on home confinement under 18 U.S.C. § 3624(c)(2). See Furando v. Ortiz,

11

No. CV 20-3739(RMB), 2020 WL 1922357, at *2 (D.N.J. Apr. 21, 2020) ("Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months."). Attorney General Barr used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda.

Where legislation has "failed to address a precise question, but has given an 'express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' then the agency's 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'" Zheng v. Gonzales, 422 F.3d 98, 112 (3d Cir. 2005) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-44 (1984)). The plain text of the CARES Act grants additional discretion to the Attorney General; it does not require the BOP to release all at-risk, non-violent inmates. Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all we must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable in light of the legislature's revealed design.'" Lopez v. Davis, 531 U.S. 230,

242 (2001) (quoting <u>NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.</u>, 513 U.S. 251, 257 (1995)).

As applied to the BOP, the purpose of the CARES Act is to reduce the prison population by expanding the category of inmates who are suitable for home confinement consideration.  In Petitioner's case, the BOP has reasonably exercised its authority under the CARES Act.  "[F]or public safety reasons, in accordance with the March 26, 2020 Memorandum, and to ensure BOP is deploying its limited resources in the most effective manner, the BOP is currently assessing a number of factors to ensure that an inmate is suitable for home confinement . . . ."  Declaration of Case Management Coordinator James Reiser ("Reiser Dec."), ECF No. 12-2 ¶ 18.  The March 26 Memorandum specifically excludes sex offenses from CARES Act home confinement consideration.  March 26 Memorandum at 2.  "Petitioner is serving a 300 month sentence for Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(A)(5)(B).  Moreover, he has only served 28% of the 300 month sentence as of the date of his filing the instant petition, again making him ineligible for transfer under the CARES Act."  <u>Id.</u> ¶ 23.  <u>See also</u> <u>id.</u> ¶ 19 ("[] BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences.").  Determining that inmates

convicted of certain offenses pose a risk to the public's safety is not an abuse of the BOP's discretion.³  See, e.g., Lopez v. Davis, 531 U.S. 230 (2001) (holding the BOP may categorically exclude prisoners from early release based on their preconviction conduct).

The Court is cognizant of the risk associated with COVID-19, "a risk that is not unique to individuals in custody and a risk this Court does not take lightly . . . ."  Wragg v. Ortiz, No. 20-5496, ___ F. Supp. 3d ___, 2020 WL 2745247, at *19 (D.N.J. May 27, 2020)(footnote omitted).  As of April 30, 2020, FCI Fort Dix had 27 inmates who have tested positive for COVID-19.⁴  Reiser Dec. ¶ 22.  "All of the inmates are designated to the minimum security Camp, isolated together in a Unit."  Id. "To date, no FCI Fort Dix Low inmates have tested positive for the virus.  The Camp is physically located outside of the Low security secured compound."  Id.  Petitioner "is a Low security inmate designated to the FCI, a location that has not yet had an

---

³ According to the Eighth Circuit, "DeFoggi 'focused on obtaining the most violent pornography possible directed against the youngest children.'"  United States v. DeFoggi, 878 F.3d 1102, 1105 (8th Cir.), cert. denied, 138 S. Ct. 2643 (2018).

⁴ As of June 2, 2020, the BOP reported 19 inmates and zero staff members as actively testing positive, with 26 inmates and 5 staff members having recovered from the virus at Fort Dix. COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last visited June 2, 2020).  No inmate or staff deaths have been reported.  Id.

14

inmate test positive for COVID-19." Id. ¶ 23.  Moreover, the BOP has implemented significant safety precautions at the Low. See generally Reiser Dec. ¶ 21; Wragg, 2020 WL 2745247, at *7-9. Even accepting Petitioner's stated medical conditions, he has not shown that the BOP failed to take appropriate measures to protect him and other inmates in FCI Fort Dix Low.  Because the BOP's interpretation of the CARES Act is reasonable as applied to Petitioner and because he has not shown that the BOP has failed to provide adequate safety measures, he will not be prejudiced by dismissing the petition as unexhausted.

Based on the record before the Court, the Court finds that release to home confinement is not warranted because Petitioner did not exhaust his administrative remedies.  Petitioner has not shown cause and prejudice because there was no cause for failing to exhaust and no prejudice because BOP did not abuse its discretion and has taken measures to protect him and other inmates against the threat of COVID-19.

The Court will dismiss Petitioner's motion for reconsideration as moot because the United States addressed Petitioner's original filing in the answer.  All of Petitioner's arguments have been considered by the United States and the Court.  It is therefore unnecessary to address the reconsideration motion further.

15

III. Conclusion

The Court will dismiss the habeas corpus petition for failure to exhaust and will deny the motion for a hearing as it is unwarranted.  The motion for reconsideration will be dismissed as moot.

An appropriate Order will be entered.


Dated: June 2, 2020                       s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.